# 14-2840-cv

# United States Court of Appeals
## for the
## Second Circuit

ODYSSEY REINSURANCE COMPANY,

*Petitioner-Appellant,*

— v. —

CERTAIN UNDERWRITERS AT LLOYD'S LONDON SYNDICATE 53,
RELIASTAR REINSURANCE GROUP (DK), a division of
Reliastar Life Insurance Company,

*Respondents-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF and SPECIAL APPENDIX
## FOR PETITIONER-APPELLANT

CLYDE & CO US LLP
*Attorneys for Petitioner-Appellant*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 710-3900

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Appellant Odyssey Reinsurance Company ("OdysseyRe") hereby states that it is a

private non-governmental party and is 100% indirectly owned by Fairfax Financial

Holdings limited, a publicly held corporation.

# TABLE OF CONTENTS

PAGE(S)

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ...........................................................................iv

STATEMENT OF JURISDICTION..................................................................1

STATEMENT OF THE ISSUES PRESENTED......................................................2

STATEMENT OF THE CASE.........................................................................3

STATEMENT OF FACTS ..............................................................................6

    I.    The Retrocession Agreements .......................................................6

    II.   The Arbitration......................................................................8

        A.    Reinsurers Did Not Nominate Three Umpire Candidates In
            Compliance With The Arbitration Agreements ..................................8

        B.    OdysseyRe's Three Umpire Candidates Satisfy The Employment
            Requirements In The Arbitration Arguments ...................................13

SUMMARY OF ARGUMENT ........................................................................13

STANDARD OF REVIEW ............................................................................14

ARGUMENT ...........................................................................................14

    I.    The Parties' Dispute is Governed by the Federal Arbitration Act and
       the New York Convention .......................................................14

    II.   District Courts Are Authorized to Designate and Appoint An Umpire
       When A Party Fails to Follow the Arbitration Agreement As Written,
       Including the Method of Appointing the Umpire .................................15

III. Applying FAA Section 5 To The Facts Here Should Have Resulted In The District Court's Appointment Of A Proper Umpire ........................18

    A. Mr. Loring By His Own Admission Does Not Meet The Agreed to Employment Criteria .........................................................................19

    B. Mr. Turley's Disclosures Reveal He Too Does Not Satisfy the Employment Requirements ................................................................19

    C. Mr. Appel Meets the Requirements ...................................................21

IV. The District Court's Reasoning Was Flawed In Rejecting OdysseyRe's Challenge To The Reinsurers' Umpire Candidates .................................21

    A. The District Court Erred In Believing It Lacked Authority To Review OdysseyRe's Petition At This Time ......................................22

    B. The District Court Erred In Relying On *Michaels v. Mariforum Shipping* ...........................................................................................23

    C. Other Courts Have Rejected The Bases On Which The District Court Decided This Case .....................................................................26

V. The District Court Erred In Ruling There Was No Lapse In The Umpire Selection Process .......................................................................30

CONCLUSION ......................................................................................................32

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Grain Co. v. Am. Eagle Fire Ins. Co.*,
  95 F. Supp. 784 (S.D.N.Y. 1951) ......................................................................15

*Albatross S. S. Co. v. Manning Bros.*,
  95 F. Supp. 459, 462 (S.D.N.Y. 1951) ............................................................24

*Allied-Bruce Terminix Cos. Inc. v. Dobson*,
  513 U.S. 265 (1995)..........................................................................................15

*Allstate Ins. Co. v. Administratia Asigurarilor De Stat*,
  948 F. Supp. 285 (S.D.N.Y. 1996) .....................................................................6

*Am. Centennial Ins. Co. v. Commonwealth Ins. Co.*,
  No. 87 Civ. 5325 (CSH), 1987 WL 17649 (S.D.N.Y. Sept. 18. 1987) .............27

*AT&T Mobility LLC v. Concepcion,*
  131 S. Ct. 1740 (2011)................................................................................15, 29

*Aviall, Inc. v. Ryder Sys., Inc.*,
  110 F.3d 892 (2d Cir. 1997) .......................................................................23, 24

*B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc.,*
  No. 11 Civ. 4032 (SAS), 2011 WL 2852857 (S.D.N.Y. Jul. 1, 2011)..............27

*BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*,
  689 F.3d 481 (5th Cir. 2012) ......................................................................22, 25

*Catz American Co. v. Pearl Grange Fruits Exch.*,
  292 F. Supp. 549 (S.D.N.Y. 1968) ...................................................................24

*Petition of Dover S. S. Co.*,
  143 F. Supp. 738 (S.D.N.Y. 1956) .............................................................24, 27

*Farrell v. Subway Int'l, B.V.*,
  No. 11 Civ. 08 (JFK), 2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011)...............18

iv

*Gerling Global Reins. Corp. v. Home Ins. Co.*,
  302 A.D.2d 118 (N.Y. App. Div. 2002) ..........................................................15

*Hall St. Assocs. v. Mattel*,
  552 U.S. 576 (2008).........................................................................................17

*Jefferson-Pilot Life Ins. Co. v. LeafRe Reins. Co.*
  2000 WL 1724661, at *2 (N.D. Ill. Oct. 26, 2000) ...................................27, 28

*Marc Rich & Co. v. Transmarine Seaways Corp.*,
  443 F. Supp. 386-88 (S.D.N.Y. 1978)........................................................23, 24

*McMahon v. Shearson/Am. Express, Inc.*,
  709 F. Supp. 369 (S.D.N.Y. 1989), *rev'd in part on other grounds*,
  896 F.2d 17 (2d Cir. 1990) ..............................................................................18

*Michaels v. Mariforum Shipping, S.A.*,
  624 F.2d 411 (2d Cir. 1980) ....................................................................23, 24, 25

*Oakland-Macomb Interceptor Drain Drainage Dist. v.
  RIC-Man Construction, Inc.*,
  304 Mich. App. 46 (2014) ........................................................................28, 29

*Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*,
  814 F.2d 1324 (9th Cir. 1987) .................................................................22, 23, 25

*Palozie v. State Farm Mut. Auto. Ins. Co.*,
  No. 96-0021-PHX-ROS, 1996 WL 814533 (D. Ariz. Dec. 2, 1996) ...............31

*In re Salomon Inc. Shareholders' Derivative Litig.*,
  68 F.3d 554 (2d Cir. 1995) ...............................................................................17

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010).........................................................................................29

*Stop & Shop Supermarket Co. LLC v. United Food and Commercial Workers
  Union Local 342*,
  246 Fed. App'x. 7 (2d Cir. 2007).................................... 14, 16, 17, 22, 25, 30, 31

*Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*,
  No. 09-C-6169, 2010 WL 431592, * 5 (N.D. Ill. Feb. 1, 2010) .....................31

v

**Statutes**

9 U.S.C. §§ 1 et seq............................................................................1, 15

9 U.S.C. § 2 .............................................................................................15

9 U.S.C. § 4 .............................................................................................16

9 U.S.C. § 5 .......................................................................................*passim*

9 U.S.C. § 10 ...........................................................................................13

9 U.S.C. § 16(a)(3) ...................................................................................1

9 U.S.C. § 202 .........................................................................................15

9 U.S.C. § 206 ...........................................................................................1

9 U.S.C. § 208 .........................................................................................15

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1332(a)(1) ..............................................................................1

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) ........................................................................1

## <u>STATEMENT OF JURISDICTION</u>

This is an appeal from a June 30, 2014 judgment entered on the Opinion and Order of the United States District Court for the Southern District of New York dated June 30, 2014 (Paul A. Crotty, J.) denying Appellant Odyssey Reinsurance Company's ("OdysseyRe") petition for an order appointing an arbitration umpire pursuant to 9 U.S.C. §§ 1 et seq. of the Federal Arbitration Act and 9 U.S.C. § 206 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("OdysseyRe's Petition").

The district court had subject matter jurisdiction over OdysseyRe's Petition under 28 U.S.C. § 1332(a)(1). OdysseyRe filed a timely notice of appeal under Fed. R. App. P. 4(a)(1)(A) on July 30, 2014. This Court has jurisdiction over OdysseyRe's appeal pursuant to 9 U.S.C. § 16(a)(3) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the district court erred by not enforcing the arbitration agreement made between the parties to select an arbitration umpire from among six umpire candidates who possessed highly specialized backgrounds to resolve a complex dispute requiring a nuanced understanding of the reinsurance marketplace?

2.      Whether the district court erred in ruling that it did not have the authority under the Federal Arbitration Act to entertain, prior to the issuance of a final award in the underlying arbitration between the parties, OdysseyRe's challenge that Appellees' umpire candidates did not possess the highly specialized employment backgrounds required by the parties' arbitration agreements?

3.      Whether the district court erred in ruling that there was not a lapse in the parties' umpire selection process under § 5 of the Federal Arbitration Act which necessitated the district court's appointment of an umpire?

## STATEMENT OF THE CASE

This case concerns the questions of whether the parties to an arbitration agreement must follow the umpire selection method in that agreement and whether a district court may enforce the arbitration agreement's plain terms prior to the arbitration taking place. Here, Appellant Odyssey Reinsurance Company ("OdysseyRe")[1] entered into arbitration agreements with Certain Underwriters at Lloyd's London Syndicate 53 and Reliastar Reinsurance Group (DK), a division of Reliastar Life Insurance Company (collectively, "Reinsurers").[2] The parties' arbitration agreements require the parties to arbitrate any dispute before a tripartite panel composed of one arbitrator appointed by each party and a third arbitrator or umpire to be selected by the two party-appointed arbitrators. If the party arbitrators do not agree upon an umpire then the umpire is to be selected by the parties exchanging a list of three umpire candidates, striking two candidates from the other party's list and then a drawing of lots to determine which of the remaining two candidates will serve as umpire.

_____

[1] OdysseyRe is a corporation organized under the laws of the State of Connecticut with its principal place of business in Stamford, Connecticut. (A-18 at ¶ 2.)

[2] ReliaStar is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Minneapolis, Minnesota. (A-7 at ¶ 2; A-418 at ¶ 2.) Syndicate 53 is an inactive underwriting syndicate which is part of the insurance and reinsurance market known as Lloyd's of London located in London, England. (A-7 at ¶ 3; A-418 at ¶ 3.) Syndicate 53 is currently managed by Shelbourne Syndicate Services Ltd. (*Id*.)

To be eligible to serve as an arbitrator or umpire under the parties' arbitration agreements, the candidates must possess highly specialized employment credentials, i.e., they "shall be officials of Insurance and or Reinsurance companies authorized to transact business in one or more states of the United States and writing the kind of business about which the difference has arisen."

The underlying business about which OdysseyRe and Reinsurers are currently in a dispute is workers' compensation business. In accordance with the terms of the parties' arbitration agreements, OdysseyRe nominated three umpire candidates who are officials of insurance or reinsurance companies authorized to transact business in the United States and to write workers' compensation business. By contrast, and in contravention of the arbitration agreements, the Reinsurers consistently failed to name three umpire candidates who met these employment requirements.

As a result of the Reinsurers' failure to follow the arbitration agreements by naming three umpire candidates with the required employment backgrounds, OdysseyRe filed with the United States District Court for the Southern District of New York (the "district court") a Petition for Order Appointing an Arbitration Umpire pursuant to 9 U.S.C. §§ 1 et seq. of the Federal Arbitration Act (the "FAA") and 9 U.S.C. § 206 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") (the "Petition")

4

asking the district court to designate and appoint one of the three umpire candidates nominated by OdysseyRe. (A-6 – A-15.)[3]

By Opinion and Order dated June 30, 2014, the district court (Hon. Paul A. Crotty) denied the Petition and ruled that the parties should proceed with the umpire selection by striking two umpire candidates from each other's lists and then drawing lots with respect to the remaining two candidates. (SPA-2 – SPA-3.)[4] In denying the Petition, the Court ruled that it could not entertain, prior to a final award in the parties' arbitration, OdysseyRe's challenge that Reinsurers' umpire candidates did not meet the employment requirements called for in the arbitration agreements. (SPA-2 n.1.) The district court also found that there was no lapse in the process.

The district court's ruling was in error because, contrary to the FAA, (1) the district court directed OdysseyRe to appoint an umpire in a manner that contravenes the parties' agreed upon umpire selection process; and (2) the district court failed to recognize a lapse that process.

---

[3] The Joint Appendix is referenced to herein as "A."

[4] The Special Appendix is referenced to herein as "SPA."

5

## STATEMENT OF FACTS

### I.  The Retrocession Agreements

The contracts at issue in the underlying arbitration between OdysseyRe and Reinsurers are specialized, technical contracts known as retrocessional agreements[5] (the "Retro Agreements").  Under the Retro Agreements, the Reinsurers provided OdysseyRe reinsurance coverage of workers' compensation losses paid by OdysseyRe to Legion Insurance Company ("Legion") under a Casualty Second Excess of Loss Reinsurance Contract effective October 1, 1998 (the "1998 Legion XOL Contract").  (A-19 at ¶ 5.)  Under the 1998 Legion XOL Contract, OdysseyRe provided two types of coverage: (1) specific excess of loss coverage for workers' compensation insurance claims Legion paid to cover the costs of injuries suffered by employees of Legion's policyholders arising out of any one loss occurrence; and (2) aggregate excess of loss coverage for workers' compensation insurance claims Legion paid to cover the combined, total costs of injuries suffered by employees of Legion's policyholders irrespective of the number of loss occurrences.  (*Id.*)

---

[5] "A 'retrocession is a form of reinsurance provided by one reinsurance company, the 'retrocessionaire,' to another reinsurance company, the 'retrocedent.'  The goal of retrocession is to indemnify the retrocedent for losses that the retrocedent sustains under the reinsurance policies that it has issued to insurance companies." *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 290 (S.D.N.Y. 1996) (internal citations omitted).

The Retro Agreements consist of two contracts: one covering OdysseyRe for its specific excess coverage of Legion under the 1998 Legion XOL Contract, (A-19 at ¶ 6, A-24 – A-44), and the other covering the aggregate excess coverage under the 1998 Legion XOL Contract, (A-19 at ¶ 6, A-46 – A-64.)

The Retro Agreements contain identical arbitration clauses:

> Should any difference of opinion arise between the Reinsurers and [OdysseyRe] which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement or the performance of the respective obligations of the parties under this Agreement, the difference shall be submitted to arbitration.

> One arbitrator shall be chosen by the Reinsurers, one by [OdysseyRe] and an umpire by the two arbitrators before they enter upon arbitration. If the arbitrators have not chosen an umpire at the end of ten (10) days following the last date of the selection of the two arbitrators each arbitrator shall name three of whom the other declines two and the decision shall be made of the remaining two by the drawing of lots.

> **The arbitrators and umpire shall be officials of Insurance and or Reinsurance companies authorized to transact business in one of more states of the United States of America and writing the kind of business about which the difference has arisen.** The arbitrators and umpire are relieved of all judicial formalities and may abstain from following the strict rules of law for the purpose of this Agreement.

(the "Arbitration Agreements"). (A-38 – A-39, Article XIII; A-58 – A-59, Article XII.)

7

## II.    <u>The Arbitration</u>

After paying Legion millions of dollars in workers' compensation claims under the 1998 Legion XOL Contract, OdysseyRe billed the Reinsurers under Retro Agreements for their share of those claims paid to Legion.  (*See* A-66 – A-67.)  The Reinsurers, however, did not pay those billings.  (*Id.*)  As a result, OdysseyRe, by letter dated February 22, 2013, demanded arbitration against Reinsurers.  (A-66 – A-67.)

As required by the Arbitration Agreements, the Reinsurers and OdysseyRe appointed as their respective arbitrators two officials of U.S. authorized insurance companies that write workers' compensation business.  (A-20 at ¶ 10.)  As detailed below, with respect to umpire selection, however, the Reinsurers, unlike OdysseyRe, failed to nominate three umpire candidates who met the employment requirements in the Arbitration Agreements, and the parties could not agree on how to move forward.

### A.    Reinsurers Did Not Nominate Three Umpire Candidates In Compliance With The Arbitration Agreements

The arbitrators did not agree on an umpire within the ten day period set forth in the Arbitration Agreements.  (A-20 at ¶ 11.)  Therefore, in August 2013, each party nominated three umpire candidates; from those six candidates would be chosen the umpire in the arbitration.   (*Id.*)

By email dated August 23, 2013, OdysseyRe forwarded to the Reinsurers a proposed questionnaire to send to the six umpire candidates asking them to make certain disclosures. (A-69; A-73 – A-89.) Among the specific inquiries included in the questionnaire was whether they met the employment requirements specified in the Arbitration Agreements: "Do you currently serve as an official of an insurance and/or reinsurance company that is authorized to transact business in any state of the United States and that writes workers compensation insurance and/or reinsurance?" (*E.g.,* A-76 – A-77, Question 6F.)

On September 10, 2013, not having heard from the Reinsurers, OdysseyRe followed up with them on its August 23, 2013 email, asking that they agree to send out the proposed questionnaires to the six umpire candidates. (A-71.) On September 30, 2013, the Reinsurers agreed to the questionnaire and to have the parties send them out jointly. (A-20 at ¶¶ 14, 15; A-816.)

On October 4, 2013, questionnaires were sent to each of the six umpire candidates. (A-20 at ¶¶ 15, 16 and A-73 – A-89.) By October 11, 2013, four of the six candidates – two candidates from each party's list of three names – declined to be considered for umpire. (A-20 at ¶ 17.) With respect to the third remaining candidate proposed by the Reinsurers – Denis Loring – it was evident from his completed umpire questionnaire that he did not meet the employment requirements set forth in the Arbitration Agreements because he was not an official of a U.S.

authorized insurance or reinsurance company writing workers' compensation business.  (A-433 – A-434, Question 5F.)  As a consequence, upon OdysseyRe's challenge to that candidate, the Reinsurers replaced Mr. Loring with a new candidate.  (A-91 – A-95.)

On December 3, 2013 the parties agreed that the Reinsurers would provide three new umpire candidates to replace their original three candidates and that OdysseyRe would provide the Reinsurers with two new umpire candidates to replace the two that declined to be considered.  (A-21 at ¶ 19; A-91.)  The exchange between the parties of new umpire candidates took place on December 5, 2013.  (A-21 at ¶ 20.)  On December 6, 2013, the parties sent the new umpire candidates a questionnaire to be completed and returned by December 13, 2013.  (A-21 at ¶ 21.)  Two of the new candidates proposed by Reinsurers, however, declined to be considered.  (A-21 at ¶ 22.)  Their third candidate, Dirk Turley, agreed to be considered for umpire and returned his questionnaire.  (*Id.*; A-98 – A-108.)  Likewise, OdysseyRe's two additional umpire candidates, Glenn Frankel and David Bradford, also agreed to be considered and returned to the parties completed questionnaires.  (A-21 at ¶ 23; A-110 – A-120; A-122 – A-133.)

On December 11, 2012, OdysseyRe advised the Reinsurers that, according to Mr. Turley's disclosures, he did not satisfy the employment requirements in the

Arbitration Agreement.[6]  (A-153.)  OdysseyRe further advised that if the

Reinsurers failed to comply with the Arbitration Agreements and name three

candidates by close of business on December 13, 2013, OdysseyRe would have no

choice but to ask the district court to intervene and appoint an umpire in the

arbitration.  (A-153.)

On December 13, 2013, the Reinsurers expressed their belief that Mr. Turley

met the employment requirements agreed to in the Arbitration Agreements and

provided material purportedly supporting their position.  (A-152.)  Those

materials, however, failed to demonstrate that Mr. Turley is an official of a U.S.

authorized company which writes workers' compensation business.  (A-167.)  At

that time, the Reinsurers also advised that they would provide replacement names

for their two most recent umpire candidates who had declined to serve.  (*See* A-

152.)

---

[6] In his completed questionnaire, Mr. Turley identifies his employer as "Markel International, Zurich".  (A-98, Question 1.)  Although there is no Markel entity by that precise name, it appears Mr. Turley's employer is a company called "Markel International Insurance Company Ltd." ("MIICL").  (Pet'r's Mem. of Law in Supp. of Pet. for an Order Appointing Arbitration Umpire at 7, *Odyssey Reins. Co. v. Certain Underwriters at Lloyd's London Syndicate 53* (S.D.N.Y. Dec. 27, 2013) (No. 13-cv-09014-PAC), ECF No. 11.)  In response to the question of whether he meets the employment requirements under the Arbitration Agreements, Mr. Turley states "yes" under the theory that "Markel at Lloyds Syndicate 3000" – but not his employer, Markel International, Zurich or MIICL – "writes workers' compensation reinsurance in the U.S." (A-101, Question 7F.)  By this answer, Mr. Turley clearly established that he did not meet the requirements of the parties' Arbitration Agreement.

On December 16, 2013, the Reinsurers identified two replacement candidates. (A-159.) In response to questionnaires sent to those umpire candidates, they both declined to be considered. (A-22 at ¶ 28.)

Due to the Reinsurers' consistent and prolonged failure to provide a list of three umpire candidates, OdysseyRe petitioned the district court on December 19, 2013 to appoint an umpire from among its three umpire candidates. (A-6 – A-15.) At the Reinsurers' request, OdysseyRe agreed to extend the time by which the Reinsurers had to oppose OdysseyRe's Petition. (A-784.) Within days of granting this extension, the Reinsurers named Richard Appel and another individual as replacement umpire candidates. (A-787.)

On January 3, 2014, OdysseyRe agreed, under a reservation of rights but in a good faith attempt to compromise, to send questionnaires to Mr. Appel and the Reinsurers' other replacement umpire candidate. (*See* A-805 – A-807.) Only Mr. Appel submitted a completed umpire questionnaire for consideration. (A-796 – A-803.) The Reinsurers' other candidate declined to be considered for umpire.[7] (A-805 – A-807.)

---

[7] Reinsurers nominated another candidate who no longer worked for the company identified by the Reinsurers as her employer and who did not return a completed questionnaire. (A-781 at ¶¶ 6-7; A-809; A-813 – A-814.)

**B.      OdysseyRe's Three Umpire Candidates Satisfy The Employment Requirements In The Arbitration Agreements**

Unlike the Reinsurers, OdysseyRe named three individuals – Anthony Vidovich, David Bradford, and Glenn Frankel – who agreed to be considered as an umpire candidate and met the employment requirements in the Arbitration Agreements.  (A-139, Question 6F; A-126, Question 6F; A-114, Question 6F.) Reinsurers do not contest that fact.

## SUMMARY OF ARGUMENT

Under OdysseyRe's and Reinsurers' Arbitration Agreements, the umpire must possess specialized employment credentials in order to serve on the arbitration panel.  After the Reinsurers consistently failed to nominate three umpire candidates who met those credentials as required by the parties' agreed upon umpire selection process, OdysseyRe petitioned the district court to intervene by designating an umpire.

In denying OdysseyRe's Petition, the district court erred in three respects: (1) it misapprehended its authority under § 5 of the FAA to intervene and appoint an umpire; (it) confused OdysseyRe's challenge to a *candidate's* qualification under the parties' arbitration agreements (which may be asserted now under § 5 of the FAA) with a challenge to an arbitrator's qualifications under § 10 of the FAA (which may be asserted only after a final award by an arbitration panel); and (3)

ruled that there was no lapse under § 5 of the FAA in the umpire selection process that warranted its appointment of an umpire.

OdysseyRe's Petition should have been granted because: (1) the FAA requires enforcement of OdysseyRe's and the Reinsurers' agreed upon umpire selection method to appoint an umpire from among six candidates who possessed the employment backgrounds required in the Arbitration Agreements; and (2) there was a lapse in the parties' selection of an umpire.

## STANDARD OF REVIEW

The district court's application of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and the Convention, 9 U.S.C. §§ 201 et seq., is a determination of law that is reviewed by this Court *de novo*. *Stop & Shop Supermarket Co. LLC v. United Food and Commercial Workers Union Local 342*, 246 Fed. App'x. 7, 10 (2d Cir. 2007).

## ARGUMENT

**I. The Parties' Dispute is Governed by the Federal Arbitration Act and the New York Convention**

The parties agree that the Federal Arbitration Act, 9 U.S.C. § 1, et seq., (the "FAA") governs this dispute. Pursuant to Section 202 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), the Convention applies to any arbitration agreement which qualifies under Section 2 of

14

the Federal Arbitration Act ("FAA").  *See* 9 U.S.C. § 202 (2014).[8]  Section 2 of the

FAA applies to contracts involving interstate commerce.  *See* 9 U.S.C. §§ 1, 2 and

202 (2014); *Allied-Bruce Terminix Cos. Inc. v. Dobson*, 513 U.S. 265, 281 (1995).

Courts have held that insurance and reinsurance conducted across state lines

constitutes "interstate commerce."  *See Ace Grain Co. v. Am. Eagle Fire Ins. Co.*,

95 F. Supp. 784, 786 (S.D.N.Y. 1951); *Gerling Global Reins. Corp. v. Home Ins.

Co.*, 302 A.D.2d 118, 125 (N.Y. App. Div. 2002) (holding that reinsurance

contracts between foreign corporation and New Hampshire corporate involve

interstate commerce).

The Retro Agreements are reinsurance contracts sold by a Minnesota

company (ReliaStar) and a London, England-based entity (Syndicate 53) to

OdysseyRe, a Connecticut-based company.  The Convention and FAA therefore

apply to the instant dispute.

## II.    Districts Courts Are Authorized to Designate and Appoint An Umpire When A Party Fails to Follow the Arbitration Agreement As Written, Including the Method of Appointing the Umpire

The "principal purpose" of the FAA is to "'ensur[e] that private arbitration

agreements are enforced according to their terms.'"  *AT&T Mobility LLC v.

Concepcion,* 131 S. Ct. 1740, 1748 (2011) (citations omitted).  Section 4 of the

---

[8] Section 208 of the Convention further provides that the FAA applies to cases arising under the Convention to the extent the FAA provisions do not conflict with the provisions of the Convention.  *See* 9 U.S.C. § 208 (2014).

15

FAA states expressly, in part, that district courts must enforce the parties' arbitration agreements as written:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (2014) (emphasis added) (SPA-4.)

Likewise, Section 5 of the FAA confers on courts the authority to select arbitrators or umpires based on a party's failure to follow the method of nominating them:

> *If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but . . . if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire,* or in filling a vacancy, then upon the application of either party to the controversy *the court shall designate and appoint an arbitrator or arbitrators or umpire,* as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]

9 U.S.C. § 5 (2014) (emphasis added) (SPA-5); *see Stop & Shop Supermarket Co.,* 246 Fed App'x. at 11.

The Act's use of the present tense verbs in Section 5 clearly manifests Congress's intent that the district court engage in the process of "select[ing]," "designat[ing]," and "appoint[ing]" *prior to* the arbitration taking place. As the Supreme Court has made clear, the FAA is to be construed literally by its terms. *See, e.g.*, *Hall St. Assocs. v. Mattel*, 552 U.S. 576, 586 (2008) (holding that the FAA's "text compels a reading of the §§10 and 11 categories as exclusive" and not permitting nontextual categories to be read into the Act). The FAA's purpose would be defeated and the parties' resources wasted to have to wait until after the arbitration decree has been entered for an aggrieved party to enforce Section 5, which would require a repeat of a likely extended and arduous arbitration process before a properly constituted, contractually agreed upon tribunal.

Courts have construed the FAA to uphold their power to engage in the timely pre-arbitration selection of arbitrators. *See In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554, 560 (2d Cir. 1995) (stating courts have power to appoint arbitrators under FAA where there is lapse in naming of arbitrator or where party fails to avail itself of method for naming umpire); *Stop & Shop Supermarket Co.*, 246 Fed. App'x. at 11 (ruling that, when, as here, arbitration agreements provide method for naming or appointing an arbitrator, "a district court has the duty under FAA § 5 to step in and appoint an arbitrator if either of the following conditions pertains: (1) one party fails to avail itself of the

17

contractual selection method, or (2) there is a lapse in the naming of the arbitrator."); *Farrell v. Subway Int'l, B.V.*, No. 11 Civ. 08 (JFK), 2011 WL 1085017, at *4 (S.D.N.Y. Mar. 23, 2011) ("[F]ederal law directs that the Court enforce the selection of the arbitrator in accordance with the terms of the Agreement."); *see also McMahon v. Shearson/Am. Express, Inc.*, 709 F. Supp. 369, 373 (S.D.N.Y. 1989) (providing that the method for naming an arbitrator agreed by the parties must be given "controlling effect") (citations omitted), *rev'd in part on other grounds,* 896 F.2d 17 (2d Cir. 1990).

### III. Applying FAA Section 5 To The Facts Here Should Have Resulted In The District Court's Appointment Of A Proper Umpire

OdysseyRe's and Reinsurers' Arbitration Agreements expressly set forth the manner and method by which the parties had to select an umpire once the party arbitrators failed to agree on one:  Each party was required to name three umpire candidates who were current officials of a U.S. authorized insurance or reinsurance company that writes workers' compensation business.  (A-38 – A-39, Article XIII; A-58 – A-59, Article XII.)  According to the clear and unequivocal terms of the Arbitration Agreements, the parties agreed, as part of the umpire appointment process, to select an umpire from a pool of six candidates who are officials of U.S. authorized companies that write workers' compensation business.  The Reinsurers named only one candidate that met the necessary employment requirements, thus depriving OdysseyRe of the benefit of its bargain to pick from a full slate of three

qualified umpire candidates. The failure by the Reinsurers to follow this selection process necessitated OdysseyRe's Petition and required the Court to appoint an umpire. *See* 9 U.S.C. § 5.

### A. Mr. Loring By His Own Admission Does Not Meet The Agreed to Employment Criteria

Mr. Loring admits in his questionnaire responses that he is not an officer of, or otherwise employed by, a U.S. authorized insurance or reinsurance company that currently writes workers' compensation business. (A-433 – A-434, Question 5F.) Mr. Loring, therefore, by agreement of the parties, cannot serve as umpire.

### B. Mr. Turley's Disclosures Reveal He Too Does Not Satisfy the Employment Requirements

Like Mr. Loring, Mr. Turley is not an official of a U.S. authorized company that writes workers' compensation business. In his questionnaire, Mr. Turley reveals only that his employer is "Markel International, Zurich" – nothing more. (A-98, Question 1.) Although there is no Markel entity by that precise name, it appears Mr. Turley's employer is a company called "Markel International Insurance Company Ltd." ("MIICL").

In response to the inquiry in the questionnaire as to whether Mr. Turley meets the employment requirements under the Arbitration Agreements, Mr. Turley states "yes" under the theory that "Markel at Lloyds Syndicate 3000" – but not his employer, "Markel International, Zurich" nor MIICL – "writes worker's

19

compensation reinsurance in the U.S." (A-101, Question 7F.) Critically, neither Mr. Turley nor Reinsurers allege (let alone show) that he is an official of Lloyd's Syndicate 3000, the company that Mr. Turley identifies in his questionnaire as the company which writes U.S. workers' compensation business. (*Id.*) Rather, Mr. Turley admits that he is the "General Manager & Underwriting Manager" of "Markel International, Zurich" or MIICL. (A-98.) However, even if Mr. Turley were an official of Markel's Lloyd's Syndicate 3000, Markel's SEC 10-Q filing establishes that the syndicate does not write workers' compensation business in the U.S. (A-175 – A-275.)

Contrary to the Reinsurers' argument made before the district court, the fact that Mr. Turley's CV stated he had been a General Manager and Underwriting Manager of Alterra Lloyd's Syndicate 1400 from 2011 to 2013 did not establish his ability to serve as umpire under the terms of the parties' Arbitration Agreements. Mr. Turley's disclosures established that, at the time he completed his questionnaire, he no longer held the position at Alterra. (A-98.) Furthermore, the Reinsurers have not shown that Lloyd's Syndicate 1400 is a U.S. authorized company which writes workers' compensation business. (A-152.) Mr. Turley, therefore, is unable to serve as umpire.

### C.    Mr. Appel Meets the Requirements

The only remaining umpire candidate proposed by Reinsurers is Mr. Appel. Mr. Appel appears to meet the employment requirements set forth in the Arbitration Agreements.  (A-757, Question 6F.)  However, the Reinsurers' nomination of a single umpire candidate that may satisfy the requirements of the Arbitration Agreements did not cure their failure to nominate two other such candidates as required under the Arbitration Agreements.

OdysseyRe, on the other hand, nominated three umpire candidates (Mr. Vidovich, Mr. Frankel, and Mr. Bradford) who met the employment requirements in the Arbitration Agreements.  (A-139, Question 6F; A-114, Question 6F; A-126, Question 6F.)  It is undisputed that OdysseyRe fulfilled its obligation under the arbitration agreement to nominate three umpire candidates who possessed the necessary qualifications.

### IV.   The District Court's Reasoning Was Flawed In Rejecting OdysseyRe's Challenge To The Reinsurers' Umpire Candidates

In refusing to entertain a OdysseyRe's challenge to the Reinsurers' umpire candidates, the district court erred in two respects:  (1) it misapprehended its authority under FAA § 5 to intervene and appoint an arbitrator, and (2) it confused a challenge to an *arbitrator's* qualifications under *FAA § 10* (which may occur only after an arbitration award) with a challenge to a *candidate's* qualifications under the parties' *contract* (which may occur now under FAA § 5).

**A.    The District Court Erred In Believing It Lacked Authority To Review OdysseyRe's Petition At This Time**

Under FAA § 5, "a district court has the duty . . . to step in and appoint an arbitrator" in at least two circumstances:  (1) when a "party fails to avail itself of the contractual selection method," or (2) when "there is a lapse in the naming of the arbitrator."  *Stop & Shop Supermarket Co.,* 246 Fed. App'x. at 11; *see BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 491 (5th Cir. 2012) (FAA § 5 authorizes court intervention to appoint an arbitrator (1) "if the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method," or (2) "if there is a lapse in the naming of an arbitrator or arbitrators") (internal quotation marks omitted); *Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 814 F.2d 1324, 1328 (9th Cir. 1987) (FAA § 5 authorizes a court to "appoint an umpire . . . if the specified [arbitrator selection] method is not utilized by one of the parties, or if there is simply a lapse in time in the naming of the umpire for any other reason").

In its Petition, OdysseyRe demonstrated that the Reinsurers had "fail[ed] to avail itself" of the required process for umpire selection when they did not nominate three qualified umpire candidates from which OdysseyRe was entitled to choose.  Accordingly, the district court had the authority to appoint an umpire under Section 5 of the FAA.  *See Pacific Reins.*, 814 F.2d at 1328 ("Under the

22

statute, the district judge was required to follow the agreement of the parties regarding the selection of the umpire.").

**B.    The District Court Erred In Relying On _Michaels v. Mariforum Shipping_**

In response to OdysseyRe's argument that the Reinsurers' candidates are unqualified, the district court relied on _Michaels v. Mariforum Shipping, S.A._, 624 F.2d 411, 414 n.4 (2d Cir. 1980), and held that it could not "entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."  (SPA-2 n.1.)  That was error because the rule in _Michaels_ applies to post-award challenges under FAA § 10, not pre-award petitions for judicial intervention under FAA § 5 based on contractually-mandated qualifications.

_Michaels_ involved a challenge under FAA § 10 to the merits of "an interim award" issued by an arbitration panel.  624 F.2d at 412.  Under § 10, "it is only after an award has been made by the arbitrators that a party can seek to attack any of the arbitrators' determinations in court," and so this Court vacated the district court's review of the interim decision.  _Id._ at 414-15.  In that context, the Court noted in _dicta_ that challenges to arbitrator qualifications cannot be reviewed "until after the conclusion of the arbitration and the rendition of an award."  _Id._ at 414 n.4

23

(citing cases)[9]; *see Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) (referring to that passage as "dicta," and holding that the FAA does not authorize "removal" of an arbitrator who has already been appointed).

The *dicta* in *Michaels* about post-award challenges to arbitrator qualifications does not apply to OdysseyRe's Petition. OdysseyRe did not seek judicial review under § 10, but judicial intervention under § 5, which expressly authorizes a district court's appointment of an arbitrator when a party fails to comply with the arbitrator-selection process in the parties' contract. *See* 9 U.S.C. § 5 (SPA-5)*; see also* cases cited *supra* pp. 17-18. Here, the parties' contract mandated specific qualifications that umpire candidates must satisfy to be eligible for appointment. In challenging Reinsurers' failure to submit qualified candidates,

_____

[9] All of the cases cited in *Michaels* footnote 4 involved challenges, unlike this one, to arbitrator neutrality. It is well-settled in this Circuit, however, that such challenges cannot be made until after a final award is rendered under Section 10 of the FAA. *See Marc Rich & Co. v. Transmarine Seaways Corp.*, 443 F. Supp. 386, 387-88 (S.D.N.Y. 1978) (considering challenge to arbitrator on basis that his involvement in another arbitration "created at least the appearance of bias" and concluding that court lacked power to decide issue prior to award being issued); *Catz American Co. v. Pearl Grange Fruit Exch.*, 292 F. Supp. 549, 551 (S.D.N.Y. 1968) (ruling that claim the arbitrators were evidently partial could only be brought after the arbitration under Section 10 of the FAA); *Petition of Dover S. S. Co.*, 143 F. Supp. 738, 740-41 (S.D.N.Y. 1956) (rejecting pre-award challenge to arbitrator based on bias and partiality); *Albatross S. S. Co. v. Manning Bros.*, 95 F. Supp. 459, 462 (S.D.N.Y. 1951) (declining to consider challenge of whether party's appointed arbitrator is disinterested because remedy for such claim is a post-award challenge under Section 10 of the FAA); *see also Aviall*, 110 F.3d at 895 (affirming dismissal of pre-award challenge to disqualify arbitrator on partiality grounds because time to bring such challenge under Section 10 of FAA is after rendering of final award).

OdysseyRe was challenging Reinsurers' compliance with the selection process set forth in the parties' contract. That is the proper subject of a § 5 petition, and nothing in *Michaels* is to the contrary.[10]

Moreover, in holding that it could not enforce the parties' contractually mandated qualifications for umpire candidates, the district court ignored Congress's clear statutory directive in FAA § 5. "In enacting § 5 of the FAA, Congress anticipated that breakdowns in the arbitrator selection process might indefinitely delay arbitration proceedings, and sought to cure this problem by granting parties access to a neutral forum, the courts, to correct such failures." *Stop & Shop Supermarket Co.*, 246 Fed. App'x. at 11; *see BP Exploration*, 689 F.3d at 493-94 ("Congress sought, in enacting § 5, to cure indefinite delay in arbitration proceedings based on disagreement over the appointment of arbitrators by providing parties with access to a neutral forum to correct such failures."); *Pacific Reins.*, 814 F.2d at 1329 ("[T]he intent of Congress was to spur the arbitral process forward, rather than to let it stagnate into endless bickering over the selection process.").

Here, the Reinsurers not only flouted the parties' agreement by failing to appoint candidates who satisfy the contractual qualifications for being an

---

[10] Because OdysseyRe's challenge to the qualifications of Reinsurers' candidates is based on the parties' contractual requirements, this case does not present the question whether FAA § 5 authorizes a court to intervene when a candidate's qualifications are challenged on a basis other than what is required by contract.

arbitrator, but they have caused undue expense and delay to the parties' proceeding. Moreover, without court intervention, the Reinsurers will have accomplished the *opposite* of what Congress intended in the FAA: they will succeed in disregarding the parties' arbitration contract and wasting significant time and resources while the parties arbitrate before an unqualified arbitrator, only to have the entire proceeding vacated and re-started when a court finally evaluates the qualifications of Reinsurers' candidates. And the Reinsurers will have used their dilatory failure to comply with the arbitration agreement to continue to benefit from reinsurance proceeds to which they are not entitled.

### C. Other Courts Have Rejected The Bases On Which The District Court Decided This Case

By denying OdysseyRe's Petition, the district court, contrary to the FAA, improperly directed OdysseyRe to participate in an umpire selection process that does not give effect to the parties' agreed upon method of appointing an umpire.

Courts in this Circuit have closely adhered to the Section 5 mandate that the parties' agreed to selection method must be enforced:

> [W]here the "parties have agreed to arbitrate, but disagree as to the operation or implementation of that agreement, under the [FAA] it is properly a matter for the Court." Here, part of the "method for the arbitration" – the selection of arbitrators that were contractually required to meet specific criteria (i.e., "professional business persons knowledgeable of the aircraft industry") – has been called into question. Accordingly, "the Court undertakes its duty under [Section] 5" to determine

26

whether a party failed "to avail itself of the proper method" of arbitration, as set forth in the parties' contract.

*B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc.,* No. 11 Civ. 4032 (SAS), 2011 WL 2852857, at *1 (S.D.N.Y. Jul. 1, 2011) (internal citations omitted) (deciding court had power to rule on challenge brought by party under Sections 4 and 5 of FAA that arbitrators did not meet contractual requirement that "[a]ll arbitrators selected and appointed…shall be professional business persons knowledgeable of the aircraft industry, including but not limited to industry executives, public accountants and management consultants"); *see also Am. Centennial Ins. Co. v. Commonwealth Ins. Co.*, No. 87 Civ. 5325 (CSH), 1987 WL 17649, at *1 (S.D.N.Y. Sept. 18. 1987) (denying motion to compel arbitration under Section 4 of the FAA because arbitrator did not meet employment requirements in arbitration agreement requiring active "executive officers of insurance or reinsurance companies authorized to transact and functioning as reinsurers within the United States"); *Petition of Dover S. S. Co.*, 143 F. Supp. at 740 (considering under Sections 4 and 5 of FAA but ultimately rejecting challenge that arbitrator was not qualified because he "lack[ed] training and experience in maritime matters and international trade" where the arbitration agreement was silent regarding criteria for arbitrator).

Like courts within the Second Circuit, other courts have also exercised their enforcement power under Section 5 of the FAA to ensure the parties' agreed upon

27

method for selecting an umpire or arbitrator is followed. In *Jefferson-Pilot Life Ins. Co. v. LeafRe Reins. Co.*, the United States District Court for the Northern District of Illinois, ruled on a party's challenge that the arbitrators in a reinsurance dispute were not "active or retired officers of a life or health insurance company and familiar with the reinsurance business", as required under the arbitration agreement in issue. No. 00 C 5257, 2000 WL 1724661, at *2 (N.D. Ill. Oct. 26, 2000). The *Jefferson-Pilot* court rejected the argument that it did not have authority under the FAA to rule on the matter before a final award was issued in the arbitration, stating:

> The question here is whether a party who challenges an arbitrator's qualifications -- just like a party who challenges bias -- must wait until the post-award stage to complain. I do not think this is necessary. Here, Jefferson-Pilot does not ask this court to undertake the difficult task of determining whether an arbitrator is impermissibly biased. Plaintiff merely asks that he be entitled to a benefit explicitly conferred by a provision of an agreement negotiated in an arm's length transaction between two sophisticated parties. The Federal Arbitration Act clearly states that contractual provisions for the appointment of an arbitrator "shall be followed."

*Id.* at *2.

In a similar ruling, the Court of Appeals of Michigan recently held that Sections 4 and 5 of the FAA permit parties to bring pre-award challenges to arbitrator qualifications if those qualifications are expressly part of the parties'

28

agreed upon selection process. *Oakland-Macomb Interceptor Drain Drainage Dist. v. RIC-Man Construction, Inc.,* 304 Mich. App. 46, 56-60 (2014).

As the *Jefferson-Pilot* and *Oakland-Macomb* courts correctly recognized, the enforcement of the parties' arbitrator selection agreement is essential to ensuring that the parties' receive the benefit of their bargain to have individuals with specific industry knowledge decide their disputes. *See AT&T Mobility LLC,* 131 S. Ct. at 1749 (designing arbitration processes tailored to the type of dispute allows parties to specify "that the decisionmaker be a specialist in the relevant field"); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (stating that the benefits to arbitration is "the ability to choose expert adjudicators to resolve specialized disputes").

In the present matter, a key provision in the Arbitration Agreements between OdysseyRe and the Reinsurers is that the arbitrators and the umpire have specialized experience with workers' compensation business so they understand the complex and technical peculiarities of that business and, therefore, ultimately decide the parties' dispute in a fair and intelligent manner. Indeed, the contracts in dispute contain idiosyncratic provisions such as the "Commutation of Losses and Sunset Clause" and "Business Reinsured" that only individuals with workers' compensation backgrounds will readily grasp and understand. (A-37, Article IX; A-57, Article VIII; A-34, Article II; A-54, Article II.) By denying OdysseyRe's

29

Petition, the district court deprived of OdysseyRe of its contractual right to have its dispute with Reinsurers decided by an umpire with specialized knowledge of U.S. workers' compensation business.

**V.     The District Court Erred In Ruling There Was No Lapse In The Umpire Selection Process**

The district court also denied OdysseyRe's Petition on the grounds that "[t]here has not been a breakdown in the process that justifies court intervention" under § 5 of the FAA.  (SPA-2.)  This ruling was in error because, based on the undisputed facts, the parties' umpire selection process had plainly stalled, requiring the district court's intervention.

After the arbitrators were unable to agree on an umpire in this matter, the parties exchanged lists of three umpire candidates on August 21, 2013 pursuant to the terms of the Arbitration Agreements.  (A-20 at ¶ 11.)  Over a period of the next four months, the Reinsurers named eleven people who were either not qualified or willing to serve as umpire in the arbitration.  (*See* A-20 –A-21, ¶¶ 15–19 and A-91–A-96; A-21, ¶¶ 22, 27 and A-159–A-165; A-809 –A-811; A-813.)  Moreover, the Reinsurers had taken the position that certain of their umpire candidates met the employment requirements under the Arbitration Agreements when the completed umpire questionnaires of those candidates revealed that they plainly did not.  Under these circumstances, the parties had clearly reached an impasse that necessitated the appointment of an umpire by the district court under § 5 of the

30

FAA. *See Stop & Shop Supermarket Co.*, 246 Fed. App'x. at 11 (finding deadlock

between parties in selecting arbitrator constitutes "lapse" under Section 5 of FAA);

*Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 09-C-6169, 2010 WL 431592,

at *1, * 5 (N.D. Ill. Feb. 1, 2010) (finding delay of over four months to be lapse in

the naming of the umpire under § 5 of FAA); *Palozie v. State Farm Mut. Auto. Ins.

Co.*, No. 96-0021-PHX-ROS, 1996 WL 814533, at *1, *7 (D. Ariz. Dec. 2, 1996)

(lapse in umpire selection under 5 § of FAA found when parties unable to agree on

umpire in six months between first offer of names and filing of action).

## <u>CONCLUSION</u>

Based on the foregoing, OdysseyRe respectfully submits that the district court's denial of its Petition should be reversed and the appointment of one of OdysseyRe's three umpire candidates – Mr. Vidovich, Mr. Frankel or Mr. Bradford – to serve as umpire in the underlying arbitration should be made.

Dated:    October 17, 2014
           New York, New York

CLYDE & CO US LLP
By:   s/ Stephen M. Kennedy
      Stephen M. Kennedy
      Linsey M. Routledge

The Chrysler Building
405 Lexington Avenue –16th Floor
New York, New York 10174
Tel.: 212-710-3900
Fax: 212-710-3950

Stephen.Kennedy@clydeco.us
Linsey.Routledge@clydeco.us

*Attorneys for Petitioner-Appellant,*
*Odyssey Reinsurance Company*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because it consists of 7163 words according to the word processor

used to create it, excluding the parts of the brief exempted by Fed. R. App. P.

32(a)(7)(B)(iii), and complies with the type face requirements of Fed. R. App. P.

32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief

has been prepared in a proportionally spaced typeface using Microsoft Word in

Times New Roman, 14 point font.

CLYDE & CO US LLP

By:   s/ Stephen M. Kennedy

      Stephen M. Kennedy
      Linsey M. Routledge

The Chrysler Building
405 Lexington Avenue –16th Floor
New York, New York 10174
Tel.: 212-710-3900
Fax: 212-710-3950
Stephen.Kennedy@clydeco.us
Linsey.Routledge@clydeco.us

*Attorneys for Petitioner-Appellant,*
*Odyssey Reinsurance Company*

**SPECIAL APPENDIX**

## SPECIAL APPENDIX TABLE OF CONTENTS

PAGE

Judgment Appealed From, dated June 30, 2014 ................................................................ SPA-1

Opinion & Order of Honorable Paul A. Crotty, dated June 30, 2014 ................................ SPA-2

**Statutes:**

9 U.S.C. § 4 ...................................................................................................................... SPA-4

9 U.S.C. § 5 ...................................................................................................................... SPA-5

**SPA-1**

Case 1:13-cv-09014-PAC   Document 24   Filed 06/30/14   Page 1 of 1

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/2014
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ODYSSEY REINSURANCE COMPANY,

Petitioner,

-against-

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SYNDICATE 53 and RELIASTAR
REINSURANCE GROUP (DK), a division of
RELIASTAR LIFE INSURANCE COMPANY,

Respondents.
-----------------------------------------------------------X

13 **CIVIL** 9014 (PAC)

**JUDGMENT**

Petitioner Odyssey Reinsurance Group ("Odyssey") having moved to appoint an arbitration

umpire to serve in Odyssey's arbitration with Respondents, Certain Underwriters of Lloyd's of

London Syndicate 53 and Reliastar Reinsurance Group (DK), a division of Reliastar Life Insurance

Company ("Reliastar") (collectively, "Respondents"), over a disputed claim for reinsurance made

by Odyssey, and the matter having been brought before the Honorable Paul A. Crotty, United States

District Judge, and the Court, on June 30, 2014, having issued its Opinion and Order denying

Odyssey's petition and directing the Clerk of Court to enter judgment and close this case, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated June 30, 2014, Odyssey's petition is denied; accordingly, the case

is closed.

**Dated:**  New York, New York
June 30, 2014

**RUBY J. KRAJICK**

Clerk of Court

BY:

Deputy Clerk

**THIS DOCUMENT WAS ENTERED**
**ON THE DOCKET ON** _____

**SPA-2**

Case 1:13-cv-09014-PAC   Document 23   Filed 06/30/14   Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ODYSSEY REINSURANCE COMPANY,          :

               *Petitioner,*          :

  -*against*-          :

CERTAIN UNDERWRITERS AT LLOYD'S      :
LONDON SYNDICATE 53 and RELIASTAR   :
REINSURANCE GROUP (DK), a division of   :
RELIASTAR LIFE INSURANCE             :
COMPANY,

               *Respondents.*          :

-------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 6-30-14

13 Civ. 9014 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Petitioner Odyssey Reinsurance Group ("Odyssey") petitions the Court to appoint an

arbitration umpire to serve in Odyssey's arbitration with Respondents, Certain Underwriters of

Lloyd's of London Syndicate 53 and Reliastar Reinsurance Group (DK), a division of Reliastar

Life Insurance Company ("Reliastar") (collectively, "Respondents"), over a disputed claim for

reinsurance made by Odyssey.  (Petition for Order Appointing Arbitration Umpire ("Petition") at

1.)  There is no need to recount the difficulties or to assess blame for the delays in finalizing the

appointments prior to the commencement of arbitration.  There has not been a breakdown in the

process that justifies court intervention.  Respondents have now made their three appointments

(Richard Appel, Denis Loring, and Dirk Turley)[1] and Odyssey has as well (Anthony Vidovich,

---

[1] Petitioner argues that Respondents' selected candidates are not qualified. But "a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 fn. 4 (2d Cir. 1980).  None of the cases that Petitioner cites challenges this Second Circuit precedent.

1

SPA-3

David Bradford, and Glenn Frankel).  Accordingly, the parties should proceed to the next stage

of arbitrator selection as described in the Retro Agreements.

### CONCLUSION

Odyssey's petition is denied.  The Clerk of Court is directed to enter judgment and close

this case.

Dated: New York, New York
      June 30, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

2

SPA-4

9 U.S.C. § 4:

§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

SPA-5

9 U.S.C. § 5:

§5.  Appointment of arbitrators or umpire

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.